|,BROWN, Judge Pro Tempore.
John Wheat appeals the denial of his workers’ compensation claim. For the following reasons, we affirm.

FACTS

In June 1997, John Wheat was working for Four Star Industrial Contractors, Inc., as a welder. Following a 7:00 a.m. safety meeting on June 23, 1997, he allegedly tripped, fell, and injured his back while moving a 20-inch pipe. The essential question concerns whether the June 23rd incident was truly an accident causing injury or an occurrence staged by Wheat in order to collect workers compensation benefits.
Wheat testified that his injury occurred when he was moving the pipe which he and a helper named David had picked up with a crane. He said that other pipes were scattered around the floor and as he was backing up, he tripped and fell. Jeffrey Guidry, a safety coordinator with Four Star, did not see the fall but did observe Wheat laying over a pipe on the floor. Guidry had Wheat remain still until an ambulance arrived. Guidry filed a report of the incident. Wheat was taken by ambulance to Columbia Medical Center; he was examined, treated, and released with a diagnosis of lumbar strain. The radiology report indicated mild lumbar spondylosis. Thereafter, Wheat went to a family practitioner and was referred to a neurologist who examined him on June 30, 1997. At that time, the CT report showed moderately severe central canal stenosis at the L4— L5 level. Wheat was not seen again by a physician until January 1998 when he visited a different family practitioner who referred him to a neurosurgeon. The neurosurgeon found “some degeneration and a small left L4 -5 disc herniation.” He also advised that Wheat was unable to work.
Following the alleged accident, Wheat filed for unemployment benefits, certifying that he was able to return to work. Wheat did subsequently return to | ¿work for Four Star for a short time, but left his employment in mid-July 1997. Wheat then held a string of full-time jobs from July 1997 through January 1998. Most of the jobs paid around $15.00 an hour. In February 1998, Wheat filed a claim seeking workers’ compensation benefits from Four Star.
There was a period of approximately seven months during which Wheat received no medical treatment. His explanation was that he was unable to afford medical care. Wheat characterized his jobs from late 1997 through early 1998 as “light-duty jobs” that he engaged in so that he could pay his ongoing household bills and expenses.
Only Derrick Stewart,[1] Wheat’s nephew, claimed to have seen the fall. Stewart testified that he and his uncle “were pretty much always together;” however, he did not tell Wheat that he saw the accident until approximately one month before trial. Wheat’s helper, David, did not testify.
In addition to Stewart’s testimony, Wheat’s wife and son testified that Wheat had no back problems prior to the alleged injury and that his disability resulted from the fall.
Wheat’s son-in-law, Nicholas Duffy, admitted at trial that he had signed a statement on the day of Wheat’s accident. Duffy’s statement was to the effect that at the 7:00 a.m. safety meeting on the day of the accident, Wheat told Duffy that Wheat’s “back problem would be billed to Four Star.” The accident happened approximately 30 minutes after the safety meeting. Duffy testified that the signed statement was not true; Duffy asserted that he signed the statement because he was afraid for his job. Duffy also admitted signing a second statement the day after Wheat’s alleged injury. . The subsequent statement indicated that Wheat was complaining about problems with his back on Friday, June 20, 1997, at Duffy’s 1 ^residence, and that because of his back, Wheat rested the next two days, June 21st and 22nd. Duffy also retracted this statement at the hearing.
*693 Kenneth Landry, a pipefitter at Four Star, testified that at the 7:00 a.m. safety meeting on the morning of Wheat’s alleged injury, he observed Wheat “walking funny, like with a stiff back.” He further testified that he asked Duffy what was wrong with his father-in-law, and that Duffy said that Wheat had hurt himself over the weekend.
John Lane, the shop foreman at Four Star, testified that at the safety meeting on the morning of the alleged accident, Wheat looked “like he was stoved up or whatever.” According to Lane, Wheat was “walking a little funny.” Lane also spoked with Duffy about Wheat, and stated that Duffy said words to the effect that Wheat “was hurting all weekend, laid up all weekend.”
Steve Whitfield, one of the owners of Four Star, testified to his handwriting on both of the statements signed by Duffy, and to his presence when Duffy signed the statements. Whitfield denied ever threatening Duffy concerning his job.
The WCJ issued written reasons for judgment as follows:
This matter came for Trial on October 19,1998 at Baton Rouge, Louisiana.
John Wheat testified that he injured his back on June 23, 1997, while working as a welder for 4 Star Industrial Contractors. The issue presented is whether an accident occurred within the course and scope of employment? The evidence presented does not lead to the conclusion that any accident occurred. Mr. Wheat is not a very credible witness. He readily admits to lying in applying for unemployment benefits and taking union jobs that do not require that he work. Mr. Wheat testified that he did not receive medical treatment for seven months because he could not afford it. The evidence presented at trial shows that Mr. Wheat was working during this time period and earning significant wages. It strains credibility that a person in pain would not seek treatment. Derek Stuart, Mr. Wheat’s nephew, testified at trial that he witnessed the accident. Mr. Stuart quit 4 Star after a dispute concerning his performance. He was not listed as a witness and his relationship with the claimant calls his testimony into question. His credibility is also questionable because he testified that he is close to his uncle and |4spends time with him but was unaware until one month before trial that Mr. Wheat had a workers’ compensation claim.
Nicholas Duffy, Mr. Wheat’s son-in-law, signed statements on June, 23, 1997 and June 24, 1997 alleging that Mr. Wheat had injured his back over the weekend prior to June 23, 1997. Mr. Duffy tried to retract those statements at the time of trial. He explained that he signed the statements- because he was concerned about his job. Mr. Duffy did not witness the alleged accident.
The evidence presented does not prove that an accident occurred. Mr. Wheat lied to the unemployment office, he did not seek medical treatment for seven months and he worked earning a substantial amount of money during the time he did not treat with a physician. He returned to work at 4 Star shortly after his alleged accident and could have continued to work if he had not quit. The work he performed for the other employers was menial in nature and required lifting. This is an unwitnessed accident. The testimony of Mr. Stuart is not credible. A witness, who is supposedly close to his uncle but appears as a witness only one month prior to the trial and then testifies that he was unaware of a claim is not believable. Mr. Duffy was unfortunately caught between his family and his earlier statements. The earlier statements are more credible.
Mr. Wheat is capable of working as he has shown in the past. No accident occurred within the course and scope of employment.

DISCUSSION

A WCJ’s findings of fact in a workers’ compensation proceeding cannot *694 be set aside in the absence of manifest error or unless they are clearly wrong. Alexander v. Pellerin Marble and Granite, 93-1693 (La.01/14/94), 630 So.2d 706. When findings of fact are based on determinations regarding the credibility of witnesses, the manifest error/clearly wrong-standard demands great deference to the trier of fact’s conclusions because variations in demeanor and tone of voice bear heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In this case there was conflicting evidence. Obviously, we cannot say that the WCJ’s credibility determinations were manifestly erroneous or clearly wrong. Recognizing this dilemma, appellant asserts that the manifest error/clearly wrong rule does not apply because the injured worker’s testimony was uncontradicted and | .^corroborated by his co-workers. Further, emergency medical treatment was required and rendered. We disagree. The question is whether Wíeat staged the accident or suffered any back injury at the plant. On this question, the testimony is conflicting, and the manifest error/clearly wrong standard is clearly applicable.
Appellant also argues that the WCJ made contradictory conclusions by first finding that there was no on-the-job accident and then stating that an unwitnessed on-the-job accident occurred. The WCJ, however, had discounted the testimony of Mr. Stewart and was simply referring to an unwitnessed alleged accident. We do not find the WCJ’s conclusions to be contradictory.
CONCLUSION
For the reasons set forth above, the judgment herein is affirmed at appellant’s cost.
AFFIRMED.

. The transcript spells his name as "Stewart” while the briefs and WCJ spell it "Stuart.”